UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO.: 5:04cv33-R

RICHARD L. TAYLOR                                                                                               PLAINTIFF

v.

TECO TRANSPORT, INC.                                                                                      DEFENDANT

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Teco Transport, Inc.'s ("Teco") Motion for a New Trial, Judgment as a Matter of Law, or Remittiur (Docket #122). The Plaintiff, Richard L. Taylor ("Taylor") has responded to that motion (Docket #126), and the Defendant has replied to that response (Docket #137). This matter is now ripe for adjudication. For the following reasons, the Defendant's Motion for a New Trial, Judgment as a Matter of Law, or Remittiur is **DENIED**.

## PROCEDURAL HISTORY

On August 18, 2006, a jury found in favor the Plaintiff, Richard L. Taylor. Following the trial, on September 1, 2006, this Court entered judgment on this matter in favor of the Plaintiff (Docket #119). The jury awarded the Plaintiff a present value of $817,914.00 in damages. The Defendant opposes this award, contending that: it was unfairly prejudiced by the admission of photographs; the evidence did not support a finding of liability; the Court failed to exclude material safety data sheets; the Plaintiff had an abnormal reaction to Bitumastic; the Court should have permitted the Plaintiff's expert to testify on OSHA regulations; and the jury's verdict was excessive.

## STANDARD

"The standard to be applied by a district court in ruling on a motion for a new trial is set forth in Rule 59[a] of the Federal Rules of Civil Procedure, which provides that '[a] new trial may be granted...for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States.'" *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 467-8 (1995); FRCP 59(a). In addition, district courts may grant a new trial where "it is quite clear that the jury has reached a seriously erroneous result." *Id.* at 468. A new trial is warranted under FRCP 59(a) when a jury has reached a *seriously* erroneous result as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party, such that the proceedings were influenced by prejudice or bias. *Holmes v. City of Massillon*, 78 F.3d 1041, 1045-46 (6th Cir.1996)(emphasis added) (citing, *inter alia, Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940)). However, a district court "enjoys wide latitude" in granting or denying a new trial. *D.R.C.D.T., Inc. v. Integrity Insurance Co.*, 816 F.2d 273, 276 (6th Cir.1987).

## DISCUSSION

As mentioned *supra*, the Defendant argues that the Court should grant a new trial for six (6) reasons, including: 1) it was unfairly prejudiced by the admission of photographs; 2) the evidence did not support a finding of liability; 3) the Court failed to exclude material safety data sheets; 4) the Plaintiff had an abnormal reaction to Bitumastic; 5) the Court should have permitted the Plaintiff's expert to testify on OSHA regulations; 6) and the jury's verdict was excessive. The Court will address each of these reasons separately.

### 1. The Admission of the Photographs

Teco claims that it was "unfairly prejudiced" by the admission of photographs taken by the Plaintiff in March 2006. Teco contends that the photos were not disclosed until five (5) months after they were taken in August 2006, and because of this the Defendant did not have the opportunity to question the Plaintiff's expert about the photographs during his deposition in July 2006. In addition, the Defendant argues that the photographs demonstrate that phototherapy was not working. The Defendant believes that the jury, which awarded the Plaintiff future medical benefits, was improperly persuaded by the photographs.

The Court, which heard similar arguments by the Defendant on this matter prior to the admission of the photographs as brought forth by the Defendant in this motion, determined that while the photographs may be harmful to Teco, the photographs still provided an accurate depiction of Taylor's skin condition at that time, and therefore, were not overly prejudicial. At trial, Taylor testified that his condition worsened after his initial rounds of phototherapy ceased in late February 2006, and that the pictures taken in March 2006 depicted his condition after he stopped receiving phototherapy. As such, the photographs were probative to the issue of whether or not the phototherapy sessions aided the condition of the Plaintiff.

Dr. Truett, the Plaintiff's expert, testified at trial that patients should see significant results after fifteen (15) sessions. Between January 5, 2006, and February 22, 2006, the Plaintiff had completed fourteen (14) sessions. At trial, Teco had ample opportunity to show the photographs the Plaintiff's expert, and question him about them. In addition, Teco could have questioned its own expert about the photographs; however, Teco chose not to do so. The admission of the photographs did not unfairly prejudice the Defendant.

### 2. The Evidence Supporting a Finding of Liability

The Defendant contends that the Plaintiff failed to meet its burden of proof in demonstrating that the negligent acts of the Defendant relate to the accident that caused the injuries to the Plaintiff as required by the Jones Act.  During the trial, the Plaintiff put forth evidence that Taylor went into the water tanks, which contained Bitumastic, on board the ANN PETERS on two (2) occasions; once in November 2000, and again in May 2003.  In addition, the Plaintiff offered evidence that Teco failed to provide the Plaintiff with proper personal protective equipment before he entered the water tanks.  Further, the Plaintiff provided evidence that showed the Defendant did not meet the standard of care established by OSHA.  The jury made its determination based on this evidence, which was more than ample to prove that the negligence on the part of the Defendant related to the Plaintiff's exposure to Bitumastic.  This exposure, as argued by the Plaintiff, then caused the skin condition present on Mr. Taylor.  Accordingly, there was credible evidence to support a finding of liability by the jury.

### 3. The Material Safety Data Sheets

The Defendant contends that the Court should order a new trial because it erroneously admitted the Material Safety Data Sheets ("MSDS") regarding Bitumastic.  The Defendant argues that the MSDS reports were misleading to the jury and prejudicial to Teco because of the mentioning of the risk of cancer.  In addition, the Defendant claims that the MSDS reports are irrelevant to Bitumastic applied on board the ANN PETERS before 1990 because the sheets were made in the mid-1990's.  The Defendant also suggests that the Court should have distinguished between the application of Bitumastic, which it claims the MSDS reports relate to, as opposed to the removal of Bitumastic; which the Plaintiff claims he was exposed to from the water tanks on board the ANN PETERS during the removal of Bitumastic.  Further, the

Defendant suggests that the Bitumastic on the MSDS report was not specific as to what kind of Bitumastic it was referring to. Ultimately, Teco asserts that it was unfairly prejudiced by the introduction of information about the health risks of applying Bitumastic when the Plaintiff did not apply it, but instead removed it.

At trial, Dwayne Meyer, an expert for the Plaintiff, testified that MSDS reports provide the best available information as to the health risks of removing Bitumastic. In addition, Duane Dubrock, the safety manager for Teco, testified that he reviewed the MSDS report for Bitumastic in 1997, and that he again referred to the MSDS report in 2003. Lastly, two (2) experts at trial testified that the main ingredient in all Bitumastic products was coal tar, and that the MSDS reports for Bitumastic products state the same health risks. As such, the Defendant's argument that the report does not specify what brand of Bitumastic it was referring to, and therefore unfairly prejudiced the Defendant, fails.

In its order of August 4, 2004, the Court denied a similar motion *in limine* asserted by the Defendant addressing these same issues because the Plaintiff had provided experts to explain the sheets, and the evidence indicated that Teco may have relied on the sheets at some point. As noted *supra*, the testimony at trial addressed both of these matters. The MSDS reports were relevant regarding the safe removal of Bitumastic, and Teco consulted the MSDS reports before removing the Bitumastic from the ANN PETERS. Accordingly, the Court appropriately admitted the MSDS reports into evidence, and MSDS reports did not unfairly prejudice the Defendant.

### 4. The Idiosyncratic Reaction of the Plaintiff

The Defendant renews its motion for a judgment as a matter of law, which was

previously denied by the Court during the course of trial, because it contends that the Plaintiff should not have been able to recover damages for it deems an "idiosyncratic reaction" to Bitumastic.  At trial, the Plaintiff offered two (2) cases in support of its motion, including a Supreme Court of Alabama case, *Short v. Edison Chouset Offshore, Inc.*, 638 So.2d 790 (Ala. 1990), and the Western District of Kentucky case of *Gordon v. Proctor & Gamble Distrib. Co.*, 789 F.Supp. 1384 (W.D.Ky. 1992).  The Defendant argues that these cases, along with the fact that no other known employee of Teco experienced similar issues due to an exposure of Bitumastic, mandates that the Court grant the Defendant judgment as a matter of law.

      In both of those matters, unlike the instant case, the substances involved were not harmful.  In *Short*, the Court noted that the Plaintiff could not identify the source of the harmful substance, and therefore, his claim failed as a matter of law. *Short*, 638 So.2d at 792-93.  The Court also concluded that "the plaintiff cannot recover from defendants because there can be no recovery for injuries which result from allergic or idiosyncratic reactions to otherwise *harmless* substances." *Id.* at 793 (emphasis added).  In *Gordon*, the substance in question involved a prescription mouthwash that allegedly caused the plaintiff to suffer taste problems. *Gordon*, 789 F.Supp. at 1385.  The plaintiff brought suit against the defendant under a theory of products liability, and the court determined that the plaintiff had failed to prove a defect in the product, and therefore, could not recover for her reaction to it. *Id.*

      Here, in contrast to those cases, Bitumastic is not a "harmless" substance or a substance one would acquire by prescription.  The potential harmfulness due to exposure to Bitumastic is well defined.  Accordingly, those cases neither bind nor persuade the Court that the Plaintiff should not have recovered for what the Defendant deems an idiosyncratic reaction.

In addition, the fact that no other Teco employees reported suffering from exposure to Bitumastic does not relieve the Defendant of liability in this matter. The Defendant did not offer any evidence as to the conditions in which these other employees may have come in contact with Bitumastic, and ultimately, at issue was not whether the Plaintiff's reaction was idiosyncratic; at issue was whether the Defendant acted negligent in having the Plaintiff remove Bitumastic on the ANN PETERS, and whether such negligence related to the injuries suffered by the Plaintiff. Therefore, the Court properly denied the Defendant's motion for a directed verdict.

### 5. Expert's Testimony Regarding OSHA Regulations

The Defendant argues that the Court erred when it excluded Teco's expert, Dr. Kalnas, from testifying about the OSHA regulations regarding confined space entry. The Defendant contends that had Dr. Kalnas been given the opportunity to address the OSHA regulations in question, he would have shown that Teco complied with OSHA. However, in both pre-trial reports written by Dr. Kalnas and filed by the Defendant, neither report addressed Dr. Kalnas' opinions on those matters. The Defendant made its motion to have Dr. Kalnas address these matters mid-trial. The Court properly determined that the Plaintiff did not have appropriate notice of the opinions of Dr. Kalnas on the OHSA regulations. Accordingly, the Court properly excluded Dr. Kalnas from testifying about OSHA regulations.

### 6. Excessiveness of the Jury Verdict

The Defendant asserts that the jury's verdict was excessive in this matter because the jury awarded damages outside of the range argued by the Plaintiff; the amount awarded exceeds verdicts in similar cases; and the amount awarded was not supported by the evidence.

A district court may remit a verdict "only when, after reviewing all evidence in the light

most favorable to the awardee, it is convinced that the verdict is clearly excessive, resulted from passion, bias or prejudice[,] or is so excessive or inadequate as to shock the judicial conscience of the court." *Gregory v. Shelby County*, 220 F.3d 433, 443 (6th Cir.2000). Courts allow an award of damages to stand unless it "is (1) beyond the range supportable by proof or (2) so excessive as to shock the conscience or (3) the result of a mistake." *Bickel v. Korean Air Lines Co.*, 96 F.3d 151, 156 (6th Cir.1996).

The Court will address each of the Defendant's arguments individually.

*A. The Jury Award Outside of the Range Argued by the Plaintiff*

Teco claims that the jury award of $1,000,000.00 was outside the range argued by the Plaintiff. The Plaintiff sought damages for pain and suffering, future medical expenses, and expenses incurred to obtain future medical care for a range of 30 to 40 years. The Plaintiff used an exhibit at trial that offered the jury options on what extent the range of damages should be, based on a 35 year average. However, on pain and suffering, the per diem varied from $35/day, amounting to $447,125.00, to $65/day, amounting to $830,375.00. The jury award for pain and suffering of $725,000 was well within the range. Accordingly, the jury award was not outside the range argued for by the Plaintiff.

*B. The Amount of the Verdict Exceeding Verdicts in Similar Cases*

Teco asserts that the verdict in the instant matter is excessive in comparison to other cases involving skin injuries. However, as noted by the parties, "cases involving similar injuries are in no sense controlling." *Thompson v. National R.R. Passenger Corp.*, 621 F.2d 814, 827 (6th Cir. 1980). Each side has cited other cases where the amount of verdict varied from $400,000.00 to $1,000,000.00. Based on the evidence presented by the Plaintiff to the jury, including the fact

8

that the Plaintiff will receive phototherapy for approximately 30 to 40 years, the verdict is not excessive in comparison to other cases. Accordingly, the Court finds the Defendant's argument unconvincing that other cases in somewhat similar matters have reached different awards of damages indicates that the award in this matter was excessive.

*C. The Amount of the Verdict Supported by the Evidence*

Lastly, the Defendant contends that the verdict is not supported by admissible evidence. However, as determined *supra*, the evidence presented and introduced in this matter was appropriate. Accordingly, the Court finds that the jury's award was supported by the evidence.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion for a New Trial is **DENIED**.

An appropriate order shall issue.